UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ROMAINE M., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:21-cv-915-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## INTRODUCTION

Plaintiff Romaine M. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act, and his application for social security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 9).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 6, 7. Plaintiff also filed a reply brief. *See* ECF No. 8. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 6) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 7) is **GRANTED**.

## BACKGROUND

Plaintiff protectively filed applications for DIB and SSI on July 16, 2013, alleging disability beginning March 10, 2013, (the disability onset date), due to depression; a learning disability; and high blood pressure. Transcript ("Tr.") 97-98, 201-13, 275. Plaintiff's claim was denied initially on December 20, 2013, after which he requested an administrative hearing. Tr. 10.

On June 20, 2016, Administrative Law Judge William Weir ("the ALJ") conducted a hearing in Buffalo, New York. Tr. 10. Plaintiff appeared and testified at the hearing and was represented by Brandi Smith, an attorney. Rachel A. Duchon, an impartial vocational expert, also appeared and testified. *Id.* The ALJ issued an unfavorable decision on September 16, 2016, finding Plaintiff not disabled. Tr. 10-20. On October 25, 2017, the Appeals Council denied Plaintiff's request for further review, making the ALJ's September 16, 2016 decision the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g). Tr. 1.

Plaintiff subsequently filed a complaint in the United States District Court for the Western District of New York on December 13, 2017 (Tr. 778-79), after which the Court issued an order remanding the ALJ's decision (Tr. 839-52). The Appeals Council then issued an order on July 2, 2019, remanding the case to an administrative law judge. Tr. 854.

The ALJ held a telephonic hearing on October 19, 2020.[1] Tr. 733, 755. Plaintiff did not appear at the hearing but was represented by Katherine Eastman, an attorney.[2] Tr. 733. Also appearing and testifying were psychological expert Sharon Kahn, Ph.D. ("Dr. Kahn"), and medical expert Steven Golub, M.D. ("Dr. Golub"). *Id.* On May 6, 2020, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 733-45. Therefore, the ALJ's October 19, 2020 decision became the Commissioner's final decision, and Plaintiff subsequently commenced this action.

---

[1] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") pandemic, all participants attended the hearing by telephone. Tr. 1007.

[2] Plaintiff's attorney testified that she was unable to reach him. Tr. 757-58. Thereafter, the ALJ sent Plaintiff a Request to Show Cause for Failure to Appear, and instructed Plaintiff to show good cause for his failure to appear within ten days if he wanted to have a hearing before an ALJ. Tr. 999-1000. The notice advised Plaintiff that if he did not present a good reason for missing the hearing, then the ALJ could decide the claim based on the evidence in the file because his representative had attended the hearing. Tr. 1000. *See also* Hearings, Appeals, and Litigation Law Manual, ("HALLEX") I-2-4-25.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his December 22, 2020 decision:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2013.

2. The claimant engaged in substantial gainful activity in 2019 (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

4. The claimant has obesity and obstructive sleep apnea, each of which constitutes a severe impairment (20 CFR 404.1520(c) and 416.920(c)).

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

6. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 20 CFR 416.967(b)[3] except that the claimant can no more than occasionally climb, balance, stoop, kneel, crouch, or crawl.

7. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8. The claimant was born on August 6, 1980 and was 32 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

9. The claimant has a limited education (20 CFR 404.1564 and 416.964).

10. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

12. The claimant has not been under a disability, as defined in the Social Security Act, from March 10, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 733-45.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on July 16, 2013, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 745. The ALJ also determined

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

that, based on the application for supplemental security income protectively filed on July 16, 2013, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id*.

## ANALYSIS

Plaintiff asserts two points of error. First, Plaintiff argues that the ALJ's analysis of the medical opinion evidence was unsupported by substantial evidence.  *See* ECF No. 6-1 at 13-21. Specifically, Plaintiff argues that the ALJ erred in evaluating the opinions of treating physicians Gregory Bennett, M.D. ("Dr. Bennett"), and Masashi Ohira, M.D. ("Dr. Ohira"), and improperly relied on the testimony and opinion of medical expert Dr. Golub. *Id*. In his second point, Plaintiff argues that remand is required because the ALJ rejected the opinions of Dr. Bennett and Dr. Ohira and then assessed a more restrictive RFC than opined by Dr. Golub, and therefore, improperly relied on his own lay interpretation of the record to craft the RFC. *See id*. at 21-24.

In response, the Commissioner argues that the ALJ properly weighed the opinion evidence in accordance with the applicable regulations, and his decision to assign great weight to Dr. Golub's opinion and little weight to the opinions of Dr. Bennett and Dr. Ohira was supported by substantial evidence. *See* ECF No. 7-1 at 16-23. In response to Plaintiff's second point, the Commissioner argues that the ALJ did not improperly rely on his own lay opinion in assessing Plaintiff's RFC simply because he assessed an RFC that was more restrictive than Dr. Golub's opinion, and the ALJ's RFC finding is supported by substantial evidence even if it did not directly mirror a medical opinion. *See id*. at 23-27.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The

Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ properly considered the entire record, and substantial evidence, including the medical opinion evidence, the treatment notes, minimal objective findings, physical examinations, and Plaintiff's activities of daily living supports the ALJ's finding that, despite his back pain, sleep apnea, and obesity, Plaintiff retained the RFC to perform light work with the noted limitations. Accordingly, the Court finds no error in the ALJ's decision.

The record reflects that Plaintiff was diagnosed with extremely severe obstructive sleep apnea ("OSA") in 2009. Tr. 391. The record also reflects that Plaintiff consistently suffered from obesity, with his weight ranging from 328 pounds on October 23, 2013 (Tr. 530) to 412 pounds on April 13, 2016 (Tr. 721). Plaintiff was consistently advised to lose weight and exercise (Tr. 528, 586), and on February 13, 2014, Plaintiff was referred to a nutritionist (Tr. 540).

The record also indicates complaints of back pain. An MRI of the lumbar spine in October 2013 found an L4-5 disc protrusion with a small posterior annular tear and a mild/moderate left and a mild right foraminal stenosis at L4-5 (Ex. 14F at 34). Tr. 631. Physical examinations have found varied results, with occasional tenderness on palpation and a reduced sensation in his left leg. Tr. 543, 546, 550, 564. However, Plaintiff consistently had a normal gait prior to 2016. Tr. 530, 543, 591. Plaintiff reported that Dr. Bennett advised him to start working out, despite his complaints of low back pain. Tr. 498. In December 2015, Plaintiff was referred to physical therapy for back pain, and exercise was still recommended. Tr. 596.

With respect to treatment for Plaintiff's OSA, a sleep study in November 2009 was terminated because Plaintiff had difficulty tolerating the CPAP apparatus. Tr. 1077. The sleep

study report indicated that Plaintiff "may benefit from CPAP desensitization therapy prior to further attempts at therapy and/or titration. *Id*. Plaintiff was prescribed a CPAP unit but had trouble using it, reporting that he is only able to wear the device for two hours a night. Tr. 416.  However, Plaintiff admitted that the CPAP did help, and his energy levels increased when he used it. *Id*.

In April 2015, pulmonologist Norman Sfeir, M.D. ("Dr. Sfeir"), switched Plaintiff to a BiPAP unit. Tr.  418. Dr. Sfeir advised that Plaintiff may require a "massive weight reduction" to control his sleep apnea and dyspnea and recommended bariatric surgery. Tr. 424. On June 22, 2015, Dr. Sfeir noted that Plaintiff was "doing a lot better." Tr. 426. Plaintiff reported that Breo Ellipta was working well for him with no side effects; he was not coughing, wheezing, or having nocturnal symptoms, and had no dyspnea. *Id*. Although Plaintiff reported he was still getting used to the BiPAP unit, he reported sleeping six hours per night and was in good spirits. Tr. 426-27.

In August 2015, Dr. Sfeir determined that Plaintiff would be a good candidate for a dental device. Tr. 429. Thereafter, on October 30, 2015, Plaintiff went to Jeffrey Goldberg, D.D.S, M.S., M.B.A. ("Dr. Goldberg") for oral appliance therapy ("OAT") for treatment of his sleep apnea. Tr. 712-13. Dr. Goldberg indicated that the oral device was to be used with the CPAP for best effect. Tr. 713. By December 2015, Plaintiff reported that the overall effect of the device on the quality of his sleep was very good; he slept easily and all night with the device, and his excessive daytime sleepiness was greatly reduced. Tr. 715. Plaintiff reported to Dr. Sfeir that with the device he was getting six hours of sleep; he woke up refreshed; his sleep was longer and better; his breathing was better, and the device did not bother him at all. Tr. 430.

In March 2016, Plaintiff reported he had recently obtained masks and supplies needed for his CPAP machine and was starting to use it properly again.  Tr. 1164. He reported he could get up to six hours of sleep at a time when using the CPAP correctly. *Id*. In September 2016, Plaintiff

admitted to not using his CPAP claiming that the mask made him anxious. Tr. 1123. It was noted that Plaintiff continued to gain weight and seemed to have finally accepted the fact that he may need bariatric surgery to lose weight. *Id*. Chest x-rays taken in April 2016 revealed no evidence of acute cardiopulmonary process. Tr. 1083. An examination in November 2016 revealed that Plaintiff had a waddling gait secondary to obesity, and low back pain was reproduced on palpation; however, the remainder of the findings were essentially normal. Tr. 1121.

Records from March 2018 reflect that Plaintiff requested assistance with getting his BiPAP to work, claiming his machine had been turned off "for one reason or another." Tr. 1095. Plaintiff indicated that he would like to continue using the BiPAP because it had improved his sleep and overall quality of life. *Id*. It was also noted that Plaintiff had "interval weight loss" at that time, and Plaintiff reported that he had been making a conscious effort to lose weight. *Id*.

On February 27, 2016, treating physician Dr. Bennett opined that Plaintiff was essentially unable to work, including that he could rarely lift 10 pounds, stand/walk less than two hours in an eight-hour workday, and sit about two hours in an eight-hour workday. Tr. 700-04. Dr. Bennett also opined that Plaintiff was likely to be absent form work more than four days per month, and he required a cane or other assistive device while engaging in occasional standing/walking. *Id*.

On March 4, 2016, treating physician Dr. Ohira opined that, due to obesity, low back pain, and sleep apnea, Plaintiff could rarely carry 20 pounds, occasionally carry ten pounds, and frequently carry less than ten pounds, and he could sit for less than two hours in an eight-hour workday, and stand/walk less than two hours in an eight-hour day. Tr. 706-10. Dr. Ohira further opined that Plaintiff could only sit for ten minutes at one time before falling to sleep, and he would miss more than four days of work per month. *Id*.

At Plaintiff's October 19, 2020 hearing, medical expert Dr. Golub opined that Plaintiff could only occasionally perform postural activities, such as stooping, kneeling, and crawling due to his obesity. Tr. 763. Dr. Golub further opined that the record did not contain evidence of limitations walking, sitting, standing, lifting, or carrying. Tr. 763. Dr. Golub noted that the record did not show any significant treatment for back pain, and that Plaintiff's pulmonary function was within normal limits. Tr. 762. Dr. Golub testified that he could not state that Plaintiff's sleep apnea caused additional limitations because Plaintiff was not compliant with recommended treatment. Tr. 764. Finally, Dr. Golub discussed the lumbar spine MRI findings and noted that there was no evidence of significant stenosis or nerve root impingement, and therefore, Plaintiff's lumbar spine impairment did not cause any additional physical limitations beyond the limitation to occasional postural activities. Tr. 765.

As noted above, Plaintiff argues that the ALJ erred in his analysis of the opinion evidence, and therefore, the RFC finding was not supported by substantial evidence. A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. 2015)

("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697

F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at \*4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Plaintiff argues that the ALJ reliance on Dr. Golub's opinion was improper because "Social Security regulations are clear that [] non-examining medical opinions warrant less weight in evaluation." *See* ECF No. 5-1 at 17. Plaintiff is incorrect. While the regulations state that an opinion from a treating source may be entitled to controlling weight in certain circumstances, the regulations do not state, or even suggest, that opinions from non-examining sources are automatically entitled to less weight than opinions from examining sources. *See generally* 20 C.F.R. §§ 404.1527, 416.927. Rather, the regulations explicitly provide that state agency medical consultants, which are non-examining medical experts, are "highly qualified experts in Social Security disability evaluation," and their findings should be weighed in the same manner as all other medical opinions. *See* 20 C.F.R. §§ 404.1513a(a)(1), 416.913a(a)(1) (citing 20 C.F.R. §§ 404.1527, 416.927). Moreover, the regulations make clear that the ALJ should consider several factors in weighing medical opinions, including whether the source is familiar with Social Security Administration's evidentiary requirements and the claimant's record. See 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6).

Finally, the Second Circuit has repeatedly held that opinions from non-examining sources can constitute substantial evidence in support of the ALJ's decision if consistent with other evidence in the record. *See, e.g., Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993) (opinion of state agency physician can provide substantial evidence to support ALJ's RFC finding, provided

that it is supported by evidence in the record); *Micheli v. Astrue*, 501 F. App'x 26, 29 (2d. Cir. 2012) (same). Accordingly, there is no merit to Plaintiff's argument that Dr. Golub's opinion was inherently less valuable or probative because he was a non-examining expert.

Plaintiff also argues that the ALJ should not have relied on Dr. Golub's opinion because "it [was] unclear if he actually reviewed the full record." *See* ECF No. 6-1 at 17. Specifically, Plaintiff points out that Dr. Golub testified that he reviewed evidence through August 2016. *See id*. (citing 761-62). However, Dr. Golub also testified that he received the record through Exhibit 30F, which contained records through 2018. Tr. 761. Furthermore, as Dr. Golub noted, the last substantive evidence in the record was Exhibit 25F, because Exhibits 26F through 30F did not contain medical records. Tr. 761-62. Moreover, the record does not contain records from 2019 to 2021 because Plaintiff's counsel was unable to contact Plaintiff to update the record.[4] Tr. 759, 762.

 The Commissioner posits that because Exhibit 25F contained a pulmonology note dated August 2016 (Tr. 1166-68), Dr. Golub may have mistakenly believed that the records were exhibited in chronological order. *See* ECF No. 7-1 at 14, n.8. In any case, the Court agrees that there is no reason to believe that Dr. Golub did not receive and review Exhibit 24F (Tr. 1084-1164), which, as Plaintiff concedes, contained medical records from 2018. *See* ECF No. 6-1 at17. Thus, Plaintiff's contention that Dr. Golub did not receive and review records that postdated 2016 is unpersuasive.

Furthermore, Plaintiff has not shown that his condition changed dramatically or deteriorated between 2016 and the end of the relevant period. In fact, the medical records from 2018 indicate that Plaintiff was compliant with his CPAP and sleeping better. Tr. 1085, 1090. The

---

[4] Although the ALJ held the record open after the hearing, on November 30, 2020, the ALJ notified Plaintiff's counsel that no additional evidence had been submitted nor had there been a request for more time, and he intended to close the record. Tr. 1055. Plaintiff's counsel subsequently responded on December 3, 2020, advising that she had no additional records to submit. Tr. 1056.

2018 records further show normal cardiac and pulmonary functioning. Tr. 1085, 1093, 1098. Moreover, the 2018 records show some instances of normal gait (Tr. 1094, 1103) and some instances of a limping gait (Tr. 1088). Finally, Plaintiff sometimes denied back pain in 2018 (Tr. 1100) and only once demonstrated some tenderness to palpation of the lumbar spine (Tr. 1085). Thus, even if Dr. Golub failed to review the 2018 records (which, as explained, the Court does not believe to be true), Plaintiff still has not shown that anything in these records undermined or contradicted Dr. Golub's opinion. Accordingly, the Court finds no error in the ALJ's reliance on Dr. Golub's opinion.

Plaintiff next argues that the ALJ failed to properly apply the treating physician rule to the opinions of Drs. Bennett and Ohira. *See* ECF No. 6-1 at 15-21. For claims filed prior to March 27, 2017,[5] the opinions of Plaintiff's treating physicians should be given "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2). An ALJ is required to consider several factors in determining how much weight an opinion should receive, including the length of the relationship and frequency of examinations, nature of the relationship, medical evidence that supports the opinion, consistency with the record as a whole, and if the physician's specialty is relevant to the impairment. *Burgess v. Astrue*, 537 F. 3d 117, 129 (2d Cir. 2008).

If the ALJ gives the treating physician's opinion less than controlling weight, he must provide good reasons for doing so. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998); *see also Schaal v. Apfel*, 134 F. 3d 496, 503-504 (2d Cir. 1998). Good reasons for not assigning

---

[5] New regulations regarding the evaluation of medical evidence and rescission of Social Security Rulings 96-2p, 96-5p, 96-6p, and 06-03p, took effect on March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). Because Plaintiff's claims were filed on July 16, 2013, the previous regulations are applicable to his claim.

treating source opinion controlling weight are shown through express consideration of these factors, although a "searching review of the record" can also demonstrate good reasons for the weight given the opinion that does not traverse the treating source rule. *See Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)). In addition, a treating source opinion cannot be entitled to controlling weight if it is not consistent with the source's own treatment notes or with other substantial evidence. *See Halloran*, 362 F.2d at 31-32 (citing *Veino*, 312 F.3d at 588); *Cichocki v. Astrue*, 729 F. App'x 71, 77 (2d Cir. 2013).

Contrary to Plaintiff's contentions, the ALJ in this case properly analyzed the opinion evidence and the other evidence of record when developing Plaintiff's RFC, and substantial evidence supports the ALJ's RFC finding. Tr. 738-44.  *See* 20 C.F.R. §§ 404.1527, 416.927. The ALJ reasonably found that Dr. Bennett's opinion of significant physical limitations was entitled to little weight because there was little evidence to support his opinion. Tr. 742. The ALJ further explained that Dr. Bennett's opinion was inconsistent with the opinion of medical expert Dr. Golub. Tr. 742, 764.

First, the ALJ noted that Dr. Bennett's opinion that Plaintiff could only rarely move his head and turn his neck was inconsistent with the record, including Dr. Bennett's own treatment notes (Tr. 406-15) and treatment records from Plaintiff's primary care providers (Tr. 504-97, 1085-1164), which did not show any cervical spine conditions or any complaints relating to Plaintiff's neck. Tr. 742. The ALJ further noted that while Dr. Bennett opined in February 2016 that Plaintiff required an assistive device to ambulate, Dr. Ohira opined in March 2016 that Plaintiff did not need an assistive device to ambulate. *Compare* Tr. 703 *with* Tr. 708. Moreover, as the ALJ discussed, the record showed that Plaintiff generally walked with a normal gait and without an assistive device (Tr., 417, 536, 539, 543, 546, 550, 554, 559, 564, 569, 576, 581, 591, 598, 1103,

1148, 1157, 1163) and only occasionally walked with a limp and/or a cane (Tr. 1088, 1110, 1116, 1137, 1142, 1121). Tr. 742. Finally, the ALJ noted that Dr. Bennett's opinion was inconsistent with the record, which generally showed findings of normal pulmonary functioning, intact motor strength, and back pain that was controlled with medication. Tr. 742, 417, 1118, 1121, 1157. Thus, the ALJ reasonably concluded that Dr. Bennett's opinion was inconsistent with the treatment notes and clinical findings in the record.

The ALJ also considered that Dr. Bennett's opinion was inconsistent with Dr. Golub's opinion. Tr. 742. As noted above, Dr. Golub reviewed the evidence of record and testified that Plaintiff was limited to occasional postural activities on account of his morbid obesity. Tr. 763. Dr. Golub further stated that there was no information in the record that supported any additional functional limitations. Tr. 763. Thus, in contrast to Dr. Bennett's opinion, Dr. Golub opined that Plaintiff did not have any limitations lifting, carrying, sitting, standing, and walking. *Compare* Tr. 703 *with* Tr. 764.

Based on the foregoing, the ALJ properly concluded that Dr. Bennett's opinion was inconsistent with the record and entitled to little evidentiary weight. Tr. 742; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (a treating source's opinion is entitled to controlling weight only if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence); §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

Other substantial evidence also supports the ALJ's finding that Dr. Bennett's statement was unsupported by clinical evidence. Tr. 742. Notably, other than Plaintiff's weight, Dr. Bennett did not list any clinical findings in support of his opinion that Plaintiff was severely restricted in

his abilities to lift, carry, walk, sit, stand, move his neck, and perform postural activities. Tr. 700-04; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (a treating source's opinion is entitled to controlling weight only if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence); §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion . . . the more weight we will give to that medical opinion.").

Dr. Bennett's opinion is also unsupported by his own treatment notes. Dr. Bennett indicated that he saw Plaintiff on five occasions prior to providing his opinion. Tr. 700, 406-14. Dr. Bennett's treatment notes indicate that Plaintiff complained of back pain and sleep apnea, and Dr. Bennett recommended use of a CPAP, exercise, and weight loss. Tr. 406-14. Notably, Dr. Bennett's treatment notes do not contain examination findings, aside from Plaintiff's vital signs. Tr. 406-14. Accordingly, Dr. Bennett's opinion was not supported by his treatment notes, and the ALJ reasonably concluded that it was not well-supported and not entitled to controlling weight. *See Halloran*, 362 F.2d at 31-32 (treating source opinion was not entitled to controlling weight where it was inconsistent with the source's own treatment notes); *Schillo*, 31 F. 4th at 76-79 (same).

Substantial evidence also supports the ALJ's finding that Dr. Ohira's March 4, 2016 opinion (Tr. 706-10) was entitled to little weight. Tr. 742. Dr. Ohira opined that Plaintiff was only able to rarely carry 20 pounds, occasionally carry 10 pounds, and frequently carry less than 10 pounds. Tr. 708. Dr. Ohira further stated that Plaintiff could only sit for 10 minutes at a time before falling asleep, and for less than two hours in total during an eight-hour day. Tr. 707-08. He further advised that Plaintiff could stand and/or walk for less than two hours in an eight-hour day. Tr. 708. Finally, Dr. Ohira concluded that Plaintiff would be absent from work more than four days per

month. Tr. 709. Dr. Ohira attributed Plaintiff's limitations to back pain, sleep apnea, and hypertension. Tr. 706.

The ALJ thoroughly explained his reasons for concluding that Dr. Ohira's opinion was inconsistent with the record. Tr. 743. First, the ALJ noted that Dr. Ohira attributed many of Plaintiff's significant limitations to fatigue and sleep apnea. Tr. 742, 706. The ALJ noted that Dr. Ohira opined that Plaintiff could only sit for ten minutes before falling asleep (Tr. 708), but, as the ALJ noted. the record showed that Plaintiff reported improved sleep and quality of life with use of his BiPAP and CPAP machines (Tr. 426, 1085). Tr. 743. Further, the ALJ noted that Dr. Bennett did not assess any limitations due to sleep apnea. Tr. 742, 700-05.

The ALJ further noted that Dr. Ohira's opinion of severe physical limitations was inconsistent with Dr. Golub's opinion that Plaintiff was limited to occasional postural activities on account of his morbid obesity but had no limitations in lifting, carrying, walking, sitting, or standing. Tr. 742, 763. Therefore, the ALJ reasonably concluded that Dr. Ohira's opinion was entitled to little weight because it was inconsistent with the record. Tr. 742; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (a treating source's opinion is entitled to controlling weight only if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence); §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

Dr. Ohira's opinion was also unsupported by clinical findings. Notably, although Dr. Ohira attributed Plaintiff's limitations to obesity, sleep apnea, back pain and hypertension, he did not list any clinical findings in support of his functional assessment. Tr. 706-09. Furthermore, Dr. Ohira admitted on the form that his opinion was based on Plaintiff's subjective reports at the time of the

visit, and not on any objective clinical findings. Tr. 710. Thus, the ALJ reasonably found that Dr. Ohira's opinion was not entitled to more evidentiary weight. Tr. 742; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (a treating source's opinion is entitled to controlling weight only if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence); §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion . . . the more weight we will give to that medical opinion."); *see also Polynice v. Colvin*, 576 F. App'x 28, 31 (2d Cir. 2014) (Polynice's own reports of pain were not sufficient to corroborate medical opinion based largely on such self-reports); *Roma v. Astrue*, 468 F. App'x 16, 19 (2d Cir. 2012) (Roma's subjective statements alone were insufficient to support a doctor's limitations based predominantly thereon).

Plaintiff argues that the opinions provided by Dr. Bennett and Dr. Ohira were supported by evidence in the record, such as Plaintiff's obesity; his use of a cane; examinations showing tenderness to palpation of his lumbar spine; and his being prescribed baclofen for muscle spasms. *See* ECF No. 6-1 at 16. However, the ALJ explicitly discussed Plaintiff's obesity and occasional tenderness to palpation of his spine. Tr. 740-41. The ALJ also specifically discussed that Plaintiff walked with a cane at an appointment in October 2018 but noted that the rest of the record indicated that Plaintiff walked without a cane. *Id*. The record also showed that baclofen provided good pain relief. Tr. 1121. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013) (improvement with treatment is properly considered in concluding claimant not disabled); *see also* 20 C.F.R. § 416.926a(a)(3) (ALJ must consider the effects of medications or other treatment on a claimant's ability to function).

Thus, Plaintiff has not shown that the ALJ overlooked this evidence, or that this evidence undermined the ALJ's finding that the medical opinions were not consistent with the record. While Plaintiff may disagree with the ALJ's weighing of the evidence, Plaintiff has not shown that no reasonable factfinder could have concluded that the opinions were inconsistent with the overall record. See *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record).

Plaintiff next argues that remand is warranted because the ALJ did not explicitly discuss each of the regulatory factors listed at 20 C.F.R. 404.1527(c) and 416.927(c) when weighing the opinions of Drs. Bennett and Ohira. *See* ECF No. 6-1 at 15-18. However, as the Second Circuit recently explained in *Schillo v. Kijakazi*, 31 F.4th 64 (2d Cir. Apr. 6, 2022), the failure to explicitly discuss the regulatory factors listed at 20 C.F.R. 404.1527(c) is a procedural error subject to harmless error analysis, and a court can conclude that the error is harmless if the ALJ has otherwise provided "good reasons for its weight assignment." *Schillo*, at 75 (citing *Estrella*, 925 F.3d at 96 and *Halloran*, 362 F.3d at 31-32).

Even if the ALJ's analysis did not expressly consider each factor, remand is not warranted, since the Court may conduct a "searching review" of the record to assure that the "substance of the treating physician rule was not traversed." *Estrella*, 925 F.3d at 96 (quoting *Halloran*, 362 F.3d at 32); *see also* 56 Fed. Reg. 36932, 36935-36 (August 1, 1991), *as amended* 77 Fed. Reg. 10651, 10656 (February 23, 2012) (re-designating paragraphs (d) through (f) as (c) through (e)) (other amendments omitted) (explaining that not every factor will apply in every case and certain factors (for example, treatment relationship) will sometimes take precedence over other factors; and at other times, certain combinations of factors will result in a finding that one opinion is entitled to

more weight than another, or that a single opinion is entitled to great weight while another might not be).

Furthermore, the Court notes a number of Second Circuit cases affirming the Commissioner's final decisions where it found that the ALJ gave good reason for the less-than-controlling weight accorded treating source opinions even if their analyses might not have explicitly considered all of the *Burgess* factors. *See e.g.*, *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48-49 (2d Cir. 2021); *Holler v. Saul*, 852 F. App'x 584, 585-86 (2d Cir. 2021); *Meyer v. Comm'r of Soc. Sec.*, 794 F. App'x 23, 26 (2d Cir. 2019); *Guerra v. Saul*, 778 F. App'x 75 (2d Cir. 2019); *Grega v. Saul*, 816 F. App'x 580, 582 (2d Cir. 2020). Here, the ALJ considered the longitudinal medical record and cited to several specific pieces of evidence that undermined the opinions of Drs. Bennett and Ohira, which amounted to "good reasons" for affording these opinions diminished weight. Accordingly, the Court finds that the ALJ in this case "applied the substance of the treating physician rule," and any failure to explicitly discuss each factor was harmless. *See Schillo*, 31 F.4th at 79.

In his second point, Plaintiff argues that the ALJ's RFC was not supported by substantial evidence because it does not directly mirror a medical opinion. *See* ECF No. 6-1 at 21-24. Plaintiff's argument wrongly presumes that RFCs are medical determinations, and thus, outside the ALJ's expertise. As explained above, however, RFC is an administrative finding, not a medical one. Ultimately, an ALJ is tasked with weighing the evidence in the record and reaching an RFC finding based on the record as a whole. *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (citing *Matta*, 508 F. App'x at 56) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to

weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

Plaintiff specifically contends that the ALJ rejected the opinions of Drs. Bennett and Ohira, and then found an RFC assessment that was more restrictive than Dr. Golub's opinion. *See id*. at 22-23. Contrary to Plaintiff's contentions, however, the ALJ did not "implicitly reject" Dr. Golub's opinion. *See* ECF No. 6-1 at 23. Instead, the ALJ relied on Dr. Golub's opinion but gave Plaintiff the benefit of the doubt based on his complaints of fatigue and back pain to find that Plaintiff should be further restricted to light work. Tr. 741. *See Baker v. Berryhill*, No. 1:15-cv-00943-MAT, 2018 WL 1173782, at *2 (W.D.N.Y. Mar. 6, 2018) ("Where an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand.") (internal quotation marks and citations omitted)); *Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (upholding RFC finding where "the ALJ occasionally deviated from consultative examiners' recommendations to *decrease* [plaintiff's] RFC based on other evidence in the record") (emphasis in original)..."). Thus, although the ALJ concluded that Plaintiff required a more restrictive RFC than opined by Dr. Golub, this does not entitle Plaintiff to remand. Furthermore, as previously explained, an ALJ is not required to rely on an opinion that mirrored the RFC. Accordingly, Plaintiff's argument is meritless.

As previously noted, Plaintiff bears the ultimate burden of proving that he was more limited than the ALJ found. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Smith had a duty to prove a more restrictive RFC, and failed to do so."); *Poupore*, 566 F.3d at 306 (it remains at all times the claimant's burden to demonstrate functional limitations, and never the ALJ's burden to disprove them). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's

burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which he has failed to do.

The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in the original); *see also McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."); *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (holding that "[t]he relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence," and where the ALJ's analysis permits meaningful judicial review, remand is not warranted solely for a more explicit analysis). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

For all the reasons discussed above, the Court finds that the ALJ properly considered the evidence of record, including the medical opinion evidence, the treatment notes, and Plaintiff's daily activities, and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error.

## **CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 6) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 7) is **GRANTED**. Plaintiff's

Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter

judgment and close this case.

      **IT IS SO ORDERED**.


DON D. BUSH
UNITED STATES MAGISTRATE JUDGE